IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISCTRICT OF PENNSYLVANIA

KANGAROO MEDIA, INC., and )
IMMERSION ENTERTAINMENT, LLC, )
)
      Plaintiffs, )
) Civil Action No. 12-0382
  v. )
) Chief Judge Joy Flowers Conti
YINZCAM, INC, . )
)
      Defendant. )

**MEMORANDUM OPINION**

      This is a patent case involving four related patents: United States Patent No. 7,210,160 (the "'160 Patent"), United States Patent No. 8,239,910 (the "'910 Patent"), United States Patent No. 7,859,597 (the "'597 Patent"), and United States Patent No. 8,253,865 (the "'865 Patent"). Plaintiff Immersion Entertainment, LLC is the owner of the four patents, by assignment, and each patent is exclusively licensed to Kangaroo Media, Inc. (collectively, "Kangaroo"). (ECF No. 51 at ¶¶ 2-5.)[1] Kangaroo alleges that defendant YinzCam, Inc. ("YinzCam") infringes various claims of each patent.

**I.**     **Procedural History**

      On October 17, 2012, the court referred claim construction to Special Master Gale Peterson (the "Special Master"). (ECF No. 53.) The parties identified ten claims requiring construction, (ECF No. 62), and submitted briefing on those terms, (ECF Nos. 66-70). The Special Master and court held a claim construction hearing on January 29, 2013. (ECF No. 72.)

---

[1] Although Kangaroo was not the named inventor of the patents-in-suit, and did not participate in prosecution of the applications, when referring to positions taken and arguments made during prosecution, the court will ascribe such matters to Kangaroo strictly for purposes of convenience.

The Special Master filed his Report and Recommendation ("R&R") on February 5, 2013. (ECF No. 71.)

Both YinzCam and Kangaroo filed objections to the R&R on February 19, 2013. (ECF Nos. 73, 75.) Responses to the objections were filed on March 5, 2013. (ECF Nos. 76-77.) While the Special Master's R&R and the parties' objections to it were under advisement by the court, the parties filed a joint motion to stay all proceedings in this matter, pending settlement discussions. (ECF No. 78.) The court granted the motion, and directed the parties to advise the court with respect to the progress of settlement negotiations no later than June 7, 2013. (ECF No. 79.) The parties so-advised the court, and thereafter filed six additional motions to stay the case to allow settlement negotiations to proceed. (ECF Nos. 80, 82, 84, 86, 88, and 90.) In each instance the court granted to motion, but required the parties to advise the court of the status of settlement negotiations by a date-certain, usually within a period of one or two months. (ECF Nos. 81, 83, 85, 87, 89, and 91.)

On June 16, 2014, the parties filed a joint motion to lift the stay, indicating that the "parties have not completed [a settlement] agreement" and asking that the stay be lifted and a scheduling conference be held following the court's entry of a claim construction order. (ECF No. 93.) On July 3, 2014, the court lifted the stay. (7/3/2014 Text Order.) A ruling on claim construction is now necessary.

**II.      The Objections and Claim Construction**

YinzCam objects to the Special Master's recommended construction of the following claim terms: (1) "channel/channels;" (2) the "broadcast" terms; (3) "programmable portable receivers"/"programmable receiver;" (4) "upgrade, update, alteration, or modification to the device(s);" (5) "wirelessly receiv[e/ing]"/transmitted wirelessly/wirelessly

2

transmitted/transmitting;" and "communications network." (ECF No. 73.) Kangaroo objects to the Special Master's recommended construction of two groups of "selecting" terms. (ECF No. 75.)

The court reviewed the claim construction briefing, the R&R, and the briefing on the parties' objections, and adopts the R&R, largely without alteration. An order will be filed contemporaneously with this opinion setting forth the court's final claim construction of each disputed claim term. No party will be permitted to argue its rejected claim construction position to the jury. O2 Micro Int'l, Ltd. v. Beyond Innovation Tech. Co., 521 F.3d 1351, 1361 (Fed. Cir. 2008). The court will not repeat this principle with respect to each disputed claim term, but it applies with equal force throughout this opinion.

**(1) "channel"/"channels"**

The primary dispute between the parties with respect to these disputed claim terms is whether channels can be distinguished only by different frequencies. YinzCam argues that the Special Master disregards the way in which the terms are used throughout the specification, resulting in an erroneous recommended construction. (ECF No. 73 at 2.) According to YinzCam the court should look to exemplary embodiments from the specifications, and limit the claims. YinzCam reviews several examples of how the terms "channel" and "channels" are used in the specification, and alleges that these proffered examples indicate that Kangaroo intended to use the term "channels" to refer to "channels based on frequencies." (Id. at 4.)

YinzCam made these same arguments in its claim construction briefing. (ECF No. 68.) Although the Court of Appeals for the Federal Circuit has noted that the specification "is the single best guide to the meaning of a disputed term," Phillips v. AWH Corporation, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc), it also "expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment." Id. at 1323. The court finds that the Special Master appropriately reviewed the context of the claim language and the specification, and came to the proper conclusion that the "channel" terms are not limited to frequencies. (ECF No. 71 at 25-30.)

Aside from its specification-based argument, YinzCam contends that the term "channel" has an established meaning in the field of communications as a frequency that carries a signal with content unique to that frequency. (ECF No. 68 at 9-10.) Both Kangaroo and YinzCam rely on the same extrinsic sources to support their preferred definition of "channel," but selectively quote from those sources. (ECF No. 71 at 25-26.) The court concurs with the Special Master's conclusion that there is not one "ordinary and customary" meaning of the term "channel" and that frequency allocation is just one method of electronically separating content. (Id. at 29.) YinzCam's suggested definition, which restricts the term to frequency allocation, is only one way to separate channels. (Id.) The Special Master properly considered the dictionary definitions offered by both parties in making his decision, and the court concurs with that analysis.

YinzCam argues that the Special Master erred in considering the prosecution history evidence, and that such evidence cannot be used to modify what is described in the specification. (ECF No. 73 at 10.) As the Special Master noted, the Court of Appeals for the Federal Circuit, however, has found that "the prosecution history can often inform the meaning

4

of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." Phillips, 415 F.3d at 1323-24. Here, the Special Master found that the prosecution history confirmed that Kangaroo intended for frequency to be only one of several technologies for differentiating content. (ECF No. 71 at 23.) The court concurs, but finds that reliance on the prosecution history to define these terms is not necessary. That history does, however, reflect that time division multiplexing, frequency division multiple access, and code division multiple access were other methods of electrical separation of channels known in the art at the time of the invention. (ECF No. 66-11 at 17; ECF No. 71 at 29.) The court agrees with the Special Master that nothing in the patents affirmatively restricts "channels" to frequency allocations, and that there is no evidence that Kangaroo disclaimed patent scope or acted as its own lexicographer during prosecution. (ECF No. 71 at 31-40.)

    The court finds that the Special Master conducted a detailed and thorough review of these disputed claim terms and adopts the recommended constructions, with non-substantive changes. The terms "channel" and "channels" in claims 1, 7, 20, 33 of the '160 patent, in claims 22 and 23 of the '597 patent, and in claims 2 and 20 of the '865 patent are construed to mean "a pathway for information from a sender to a receiver, which may be, but is not required to be, distinguished by frequency."

**(2) "broadcast area"/"broadcasting"/"broadcast"/"wireless transmitter with a broadcast area"/"transmitting said [audio/video] content…over a broadcast area"[2]**

The primary disagreement between the parties with respect to these disputed claim terms is whether the word "broadcast" denotes use of FCC-licensed frequencies, and indicates that the same content must be simultaneously and indiscriminately distributed to all receiving parties. YinzCam argues that "broadcast" should be construed to mean "cast or scattered in all directions," and "made public by means of radio or television," (ECF No. 68 at 15), which definition it contends is "consistent with the general idea of simultaneously and indiscriminately distributing the same content to all receivers within range" (ECF No. 73 at 14). YinzCam cites to the Wikipedia page for "broadcasting" to support its view. (Id. at 13.) That definition was not presented as extrinsic evidence to the Special Master. The Special Master, however, did consider the dictionary definitions relied upon by YinzCam in its claim construction briefing, finding that those definitions failed to support YinzCam's arguments that the term "broadcast" inherently required the limitations advanced by YinzCam. (ECF No. 71 at 50.)

YinzCam asserts that the Special Master's R&R "largely reads the word 'broadcast' out of the claim" and urges that the term should not be ignored and should be given a meaning consistent with how one skilled in the art would view the term in light of the specification. (ECF No. 73 at 9-10.) The Special Master correctly found that YinzCam offered no claim language that would require broadcast to mean only disseminating the same content simultaneously to all receivers, and was instead relying on a preferred embodiment to support its argument. (ECF No. 71 at 48.) YinzCam's reliance on that one preferred embodiment is

---

[2] The court's discussion of these terms and phrases corresponds to sections VI(B), (C), and (I) of the Special Master's R&R. (ECF No. 71 at 3, 5.)

problematic in any event given YinzCam's admission that the specification discloses that video signals and audio signals can be transmitted to the receivers separately. (ECF No. 73 at 14.) The Special Master found that Kangaroo did not demonstrate a clear intent to limit the claim scope to a single embodiment. (ECF No. 71 at 48.)

The court notes that, as aptly pointed out by Kangaroo, the term "broadcast" is typically used in the patents as an adjective to modify and define the noun "area." (ECF No. 77 at 9-10.) This fact is reflected in the parties' tacit agreement that the "broadcast area" limits the reach of the transmitter, and refers to the "range of the transmitter." (ECF No. 71 at 43-44.) The term "broadcast" is used only twice in the patents as a verb, both times within the claim phrase "broadcasting the video content over the broadcast area." '597 Patent, cl. 3; '865 Patent, cl. 3. In this context, the verb "broadcasting" is self-limited by reference to the "video content" and the "broadcast area." The term "broadcast," as used in the patents, does not impose the requirement that the same content be simultaneously distributed to all receiving parties, as YinzCam contends.

YinzCam argues that the Special Master did not appropriately apply the prosecution history to limit "broadcasting" to use of the FCC-licensed frequency spectrum. In support of its argument, YinzCam refers to Kangaroo's statements, made in response to an office action, indicating that the claimed invention would not be obvious in light of a piece of prior art referred to in these proceedings as Vancelette. (ECF No. 73 at 15.) The Special Master reviewed and discussed this precise prosecution history, and concluded that there was no "clear and unambiguous disclaimer," as is required to limit the claims. (ECF No. 71 at 45-46, 50.) The court agrees with the Special Master's analysis. Kangaroo made no disclaimer of claim scope in order to secure allowance in its discussion of Vancelette during prosecution.

7

The court finds that the Special Master conducted a detailed and thorough review of these disputed claim terms and adopts the recommended constructions. "Transmitting said video content wirelessly from a wireless transmitter of a communications network over a broadcast area" and "transmitting said audio content wirelessly over the broadcast area," and indistinguishable variants, in claims 1, 6, 16,[3] and 17 of the '597 Patent, and in claim 1 of the '865 Patent are construed to mean "transmitting video content over an area within the range of the transmitter" and "transmitting audio content over an area within the range of the transmitter," respectively. The court construes "wireless transmitter with a broadcast area" in claims 19 and 32 of the '597 Patent and in claim 17 of the '865 Patent to mean "a device for wirelessly transmitting a signal over an area within the range of the transmitter." No further construction of the term "broadcasting" in claim 3 of the '597 Patent, and claim 3 of the '805 Patent is required, as that term is defined in the context of the claim language surrounding it.

### (3) "programmable portable receivers"/"programmable receiver"

In its objections, YinzCam adheres to its original claim construction position that Kangaroo limited the scope of the "programmable receiver" claim terms during prosecution in order to distinguish the prior art, and secure allowance. The Special Master refused to adopt YinzCam's position, and the court concurs.

As the Special Master noted, YinzCam does not assert that the terms are either unclear or relate to technical subject matter that would be meaningless to a jury. (ECF No. 71 at 57.) The parties are also not disputing the customary and ordinary meaning of the words. (Id.)

---

[3] Although the Special Master's R&R does not include claim 16 of the '597 Patent in its discussion of this group of claim phrases, the substance and structure of claim 16 is indistinguishable from claims 1, 6, and 17 of the '597 for purposes of claim construction, and, for this reason, claim 16 is included with the court's construction of this group of claims. Claim 16, moreover, appears in the Joint Disputed Claims Chart. (ECF No. 62 at 9.)

With respect to these terms, the Special Master concluded that the meaning was "readily evident from the phrases themselves, as well as context in which those phrases are used in the claims," making YinzCam's proposed construction both "unnecessary and potentially unduly restrictive." (Id. at 57-59.) The court agrees.

  YinzCam's position with respect to these terms has consistently been that Kangaroo's proposed construction, and now the Special Master's recommended construction, would give Kangaroo back claim scope it disclaimed during prosecution. YinzCam explains that during prosecution, Kangaroo distinguished its device from a piece of prior art referred to in these proceedings as Verna a) by arguing that "Verna's portable devices are not programmable" and "Verna has absolutely no discussion of any reason, or need, to change a frequency range at which the portable devices receive video content" and b) by adding the word "programmable" to the "portable receiver." (ECF Nos. 68 at 21-22 and 73 at 16.) According to YinzCam, Kangaroo's statements and amendments foreclose its current argument that there is no requirement that the claimed "'programmable receiver' must be one which operates at different frequencies." (ECF No. 73 at 17.)

  The court agrees with the Special Master's implicit conclusion that the prosecution history need not be considered in construing these claim terms and that the claim language is clear and unambiguous. (ECF No. 71 at 59.) The court, nevertheless, considered YinzCam's argument, but finds that Kangaroo's statements do not rise to the level of prosecution history disclaimer. As Kangaroo notes, during prosecution it provided more than one illustrative example of various programmable portable devices to distinguish its invention from the prior art, and described programming for purposes other than changing frequencies, such as, for example, "modifying or transferring new software into the memory of the device." (ECF Nos. 66-10 at 11;

9

ECF No. 77 at 11-12.) YinzCam failed to establish that the statements made by Kangaroo during prosecution rise to the level of a disavowal of claim scope.

YinzCam asserts that its proposed construction must be proper because it "takes into account the problem the applicants were attempting to solve." (ECF No. 73 at 18.) The court agrees with the Special Master's clarification that although it is a relevant consideration, claims do not have to be limited only to the problem the inventor was attempting to solve. (ECF No. 71 at 56-57.)

In accordance with the Special Mater's recommended constructions, the court finds that "programmable portable receivers" and "programmable receiver" in claims 1, 17, 19 and 32 of the '597 Patent and claims 1 and 17 of the '865 Patent do not require construction. The word "programmable" is not limited to transferring data in order to change or adjust operating frequencies.

**(4) "upgrade, update, alteration, or modification to the device(s)"**

The dispute with respect to this claim phrase is whether a change must be made to preexisting computer code, or whether the addition of new code falls within its meaning. The Special Master concluded that YinzCam's proposed construction that a change must be made to existing code is not supported by the dictionary definitions to which YinzCam cites, and "at least potentially is contrary to the specification," which specifically refers to transferring new software code and new portions of code into the memory of the devices. (ECF No. 71 at 63.)

The court concurs with the Special Master's analysis and conclusion. There is no indication that Kangaroo ascribed any special meaning to this phrase, and there is no basis on which to find that the only viable definition of it is to change preexisting computer code. As the

Special Master noted, adding new programs to a computer can upgrade it without making any changes to the code that already resides on the device. (ECF No. 71 at 63.)

The phrase "upgrade, update, alteration, or modification to the device(s)" in claims 1, 14, 19, and 32 of the '597 Patent and claim 22 of the '865 Patent needs no construction by the court, and is not limited to making changes to existing software or firmware on the devices.

**(5) "to select…from said video content"/"for selecting from [said/the] video content"/"select the audio content"/"for selecting said video content"**

These are the only proposed constructions in the R&R to which Kangaroo objects. Kangaroo contends that the court should reject the Special Master's recommendations, and not construe these terms at all. (ECF No. 75 at 6-7.) The Special Master noted, however, that there is a "core disagreement" about "whether the 'select' limitations are limited to choosing from multiple content signals 'already received at the device'" or whether "select" can include all instances in which a user controls what content is viewed or heard on his device, which disagreement requires resolution by the court. (ECF No. 71 at 65); O2 Micro, 521 F.3d at 1361 (finding that when the ordinary meaning is not enough to resolve the parties' disagreement, "claim construction requires the court to determine what claim scope is appropriate"). With respect to these claim terms, the parties are disputing "not the *meaning* of the words themselves, but the *scope* that should be encompassed by this claim language." Id. at 1361 (emphasis in original). For these reasons, the court must construe these claim phrases, and agrees with the Special Master's recommendations that "selection" must occur at the portable receiver from among content already received by the device.

As an initial matter, contrary to Kangaroo's arguments, the Special Master did not indicate that every portable device must receive every transmitted signal, which disposes of the bulk of Kangaroo's arguments that the recommended construction contradicts the plain language of the patents. (ECF No. 75 at 8-9.) Kangaroo is correct that there is no requirement in the claims that every user's handheld device receive every transmitted signal. (Id. at 9, 12.) Nothing in the Special Master's recommended constructions, however, imposes such a requirement.

In rejecting Kangaroo's position that the selection of content can occur prior to transmission, the Special Master reviewed the specification, prosecution history, and claim language. (ECF No. 71 at 68-75.) The Special Master appropriately examined claim 1 of the '597 Patent and concluded that "the 'formatting' step precedes the 'transmitting' step, and produces 'video content' that allows a user to 'select' a desired image. The 'video content' is transmitted to the 'portable receivers' and the 'selection' occurs 'at' the portable receivers." (Id. at 70-71.) The Special Master discussed the similarity of the remaining claims that include these "selecting" phrases, i.e., claims 17, 19, 32 of the '597 Patent and claims 1 and 17 of the '865 Patent, and the significance of dependent claim 2 in the '865 Patent. (ECF No. 71 at 76-84.) The proposed construction is based largely on the Special Master's careful analysis of the order in which the steps of the method claims must take place, and not on any preferred embodiment or prosecution history, as Kangaroo maintains. The Special Master's analysis is thorough, complete, and accurate, and the court adopts the Special Master's proposed constructions without alteration.

Kangaroo nevertheless contends that the Special Master erred by relying on a single embodiment in the specification to support his recommended construction. (ECF No. 75 at 10.) The court finds that the Special Master was not reading limitations from the specification

into the claims, but arrived at a proposed construction that was consistent with the specification, and with the structure of the method claims. (ECF No. 71 at 70.) The Special Master considered each of Kangaroo's arguments, made in its claim construction briefing and its objections, including with respect to claim differentiation and prosecution history, and provided ample explanation about why he rejected each. The court concurs with the entirety of the Special Master's analysis, and agrees with YinzCam that the dispute with respect to these terms is not whether every device must receive every signal, but when and where the "selecting" must take place. (ECF No. 76 at 8-9.)

Kangaroo states in a footnote that "it is not clear from the report and recommendation what determines whether content has been received by the receivers (i.e., whether anything more is required than that the signal containing the content has, for example, arrived at the wireless device's antenna), or whether it is required that the content has been stored on some medium in the receivers before it is selected and displayed." (ECF No. 75 at 9 n.4.) Kangaroo contends that the R&R suggests that storage on some medium is required, but requests clarification. (Id.) YinzCam argues that no further clarification is necessary because "whether or not the content has been received by a particular device is ultimately a fact question best resolved as part of the infringement inquiry." (ECF No. 76 at 9.) YinzCam nevertheless explains why the specification suggests that something more than "arrival at the antenna" is required. (Id. at 10.)

The parties did not raise any dispute in their claim construction briefing about what is meant by the word "receive." Kangaroo does not, in its objections, identify any issue in this litigation that turns on whether content has been "received" by the receivers. The court finds that the Special Master's recommendations are clear. Kangaroo attempts to create ambiguity

where there is none. The R&R properly concludes that "'selection' occurs 'at' the portable receivers" and "the 'selection' occurs from the 'video content' received by the portable receivers." (ECF No. 71 at 79.) No further construction is necessary at this stage.

To resolve the parties' dispute, the court construes claims 1, 17, 19, and 32 of the '597 Patent and claims 1 and 17 of the '865 Patent as follows:

> In claim 1 of the '597 Patent, the "formatting" step precedes the "transmitting" step, and produces "video content" that allows a user to "select" a desired image. The "video content" is transmitted to the "portable receivers" and the "selection" occurs "at" the portable receivers. Accordingly, the "selection" occurs from the "video content" received by the portable receivers.
>
> In claim 17 of the '597 Patent, the "formatting" step formats "audio signals" into "audio content." The "transmitting" step transmits that "audio content" to the "portable receivers." The "formatting" allows "users to play *** an audio signal selected from said audio content." The "selection" is from among the "audio content" received by the portable receivers.
>
> In claim 19 of the '597 Patent, the "video content" from which a user makes a "selection" is video content "transmitted wirelessly from a communications network," namely the "video content" received by the receiver.
>
> In claim 32 of the '597 Patent, the "video content" from which a user makes a "selection" is video content "transmitted wirelessly from a communications network," namely the "video content" received by the receiver.
>
> In claim 1 of the '865 Patent, the "selection" occurs from the "video content" received by the receiver in the handheld device. The same analysis applies to the "formatting" and "transmitting" steps for the audio content.
>
> In claim 17 of the '865 Patent, the "video content" is what the "programmable receiver" is "configured to receive." The "user interface" allows the user to select "video content for viewing by a user on said display."

### (6) "until the [first/second] spectator chooses to select another live video content"

There are two remaining disputes with respect to these claim phrases.

The first dispute is whether the selection of live video content must be made after such content is received at the portable device. This dispute was resolved in the Special Master's and court's consideration of the "selecting" terms, discussed immediately above. To restate the ultimate finding, the court agrees with the Special Master's recommendations and finds that the selection must be between content that has been received at the handheld device. Although Kangaroo groups its arguments in opposition to the Special Master's recommendations with respect to these claim phrases with the previously-considered "selection" phrases, (ECF No. 75 at 7-8, 16), the Special Master specifically examined the language of claim 1 of the '910 Patent, and explained why that claim's structure and content "reasonably suggests that the selection is between video signals received at the handheld devices." (ECF No. 71 at 88.) The Special Master pointed out that arguments made by Kangaroo during prosecution align with this interpretation of the claim language. (Id. at 89.) The court finds no reason to deviate from the Special Master's analysis.

The second dispute, i.e., whether the claimed invention requires "the ability to change instantaneously between views," was not resolved by construction of any prior terms. (ECF No. 71 at 90.) The court concurs with the Special Master that the claims do not require the ability to change instantaneously between views. (ECF No. 71 at 90.) The prosecution history relied on by YinzCam does not support its argument, and the patent itself provides no basis on which to impose this additional requirement.

With the resolution of these two disputes, the phrases "until the first spectator chooses to select another live video content" and "until the second spectator chooses to select another live video content" in claims 1 and 16 of the '910 Patent do not require any further construction.

**(7) "wirelessly receive"/"wirelessly receiving"/"transmitted wirelessly"/"wirelessly transmitted"/"transmitting" and "communications network"[4]**

The disputes with respect to these terms are derivative of the objections YinzCam made to the Special Master's recommended construction of the "broadcast" terms. See supra Sec. II(2). YinzCam's position with respect to these terms is that the only transmission method disclosed and enabled by the patents-in-suit is use of FCC-licensed frequencies to deliver the same content simultaneously to all receivers. (ECF No. 73 at 20.) The Special Master examined each piece of prosecution history relied upon by YinzCam in support of its proposed construction, and explained why that history does not compel the conclusion that Kangaroo made a clear and unambiguous disclaimer during prosecution. (ECF No. 71 at 96-97, 106.) The court finds no error in the Special Master's analysis or his conclusion that YinzCam's proposed limitations are not required by the claim language, prosecution history, or limiting statements in the specification. (Id. at 99, 106.)

For these reasons, the court concludes that "wirelessly receive," "wirelessly receiving," "transmitted wirelessly," "wirelessly transmitted," and "transmitting" in claims 1, 20, and 33 of the '160 Patent, in claims 8, 13, 14, 19, 22, and 24 of the '597 Patent, in claims 1 and 16 of the '910 Patent, and in claims 8, 13, 17, 20, and 22 of the '865 Patent, and "communications network" in claims 1, 17, 19, and 32 of the '597 Patent and in claims 1, 17,

---

[4] The court's discussion of these terms and phrases corresponds to sections VI(H) and (J) of the Special Master's R&R. (ECF No. 71 at 5.)

and 25 of the '865 Patent, do not require any additional construction, and are not limited in the manner YinzCam suggests.

### III. Conclusion

For the reasons set forth above, the Special Master's Report and Recommendation, (ECF No. 71), will be adopted, except to the extent noted otherwise. All disputed claim terms shall be construed in accordance with the order of this court filed contemporaneously with this memorandum opinion.


July 9, 2014                                        BY THE COURT:

                                                    /s/ *Joy Flowers Conti*
                                                    Joy Flowers Conti
                                                    Chief U.S. District Judge